[Crim. No. 554.   Third Appellate District.—May 5, 1921.]

## THE PEOPLE, Respondent, v. CLYDE KEPFORD et al., Appellants.

[1] CRIMINAL LAW—MOTIVE.—A motive for the commission of a crime may be shown as a circumstance tending to show guilt and the absence of motive or reason for the commission of the alleged offense may be considered as a circumstance favorable to the accused.

[2] ID.—DRIVING OF AUTOMOBILE WITHOUT CONSENT OF OWNER—EVIDENCE—PERMISSION TO USE DIFFERENT MACHINE.—In a prosecution for driving an automobile without the consent of the owner in violation of the provisions of the Motor Vehicle Act, where the defendants claimed that they rode in the car with another whom they believed to be the owner, evidence of want of motive for the crime by showing that one of the defendants had permission from his brother to use his machine was admissible to rebut the state's theory as to the willfulness of the use of the machine in question.

[3] ID.—EXCLUSION OF PROOF—LACK OF PREJUDICE—PROOF BY OTHERS. The refusal to allow one of the defendants in such prosecution to testify as to his having permission to use his brother's car was not prejudicially erroneous where his brothers testified, without objection, that defendants had such permission.

[4] ID.—IMMATERIALITY OF PERMISSION—REMARK OF COURT—LACK OF PREJUDICE.—The remark of the court in refusing to allow evidence of permission to use the brother's car, that it was wholly immaterial and taking time, was without prejudice, since any implication therefrom that the taking of the automobile without consent was sufficient to justify conviction in the absence of willfulness was removed by subsequent instructions that the taking must have been willful and felonious to justify a conviction.

[5] ID.—IMPEACHMENT OF WITNESS—CONVICTION OF FELONY—PLEA OF GUILTY—RECORD OF CONVICTION UNNECESSARY.—Where a witness in answer to a question as to whether he had ever been convicted of a felony stated that he had plead guilty to such a charge, it was not necessary to produce the record of conviction.

APPEAL from a judgment of the Superior Court of San Joaquin County.   J. A. Plummer, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1.  When accused may testify as to motive or intent, note, 21 Am. St. Rep. 318.

E. P. Foltz for Appellants.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendants were convicted of violating the provisions of the Motor Vehicle Act (Stats. 1905, p. 185), in that they "did on or about the fourteenth day of May, 1920, in the county of San Joaquin, willfully, unlawfully and feloniously drive and operate and cause to be driven and operated a motor vehicle, to wit: an automobile, not their own nor the property of either of them, on the public highway, to wit: the Lockeford-Lodi road and at the time of so driving and operating and causing to be driven and operated said automobile as aforesaid, the owner thereof one Allen M. Sherfey was not then and there present and did not consent to having said automobile above mentioned driven and operated and cause to be driven and operated as aforesaid by said defendants, Clyde Kepford and Edward Kepford or either of them."

No objection is made to the sufficiency of the information, nor is it claimed that the evidence did not warrant the verdict of the jury. The instructions are unassailed and the regularity of the proceedings is not questioned except in three particulars, which we proceed to notice.

In their brief appellants declare: "Both defendants at all times admitted being in the Sherfey machine. They claimed from the first and at the trial that a fellow who gave his name as Ryan was bootlegging at the picnic [a picnic near Lockeford, where Sherfey had parked his machine], and took them in the Sherfey machine, which they believed to be Ryan's, several times to Lockeford and back of the Lockeford hotel in a field where he had some booze hid and sold some to the boys and others until it was gone. . . . The defendants claim that Ryan was going to another place where he claimed to have liquor hid when the accident [referring to the breaking of the car] happened."

In view of this defense on the part of appellants they claim that error was committed by the trial court in its "refusal to allow evidence of want of motive for the crime by showing that the defendant, Ed Kepford [Clyde could

not operate a machine], had permission from his brother, Sydney, to use his machine that night.'' In reference to this ruling the record shows the following: ''Q. Did you have any conversation with him [referring to his brother Sydney] that night about running it that night? The Court: The court will limit further inquiry along that line. That is wholly immaterial and taking time. Mr. Foltz: That is an important matter the motive for running the machine. If a man has a machine of his own it is not reasonable he would go and steal somebody else's machine. The Court: The question is whether he took this machine. It is not a question of motive at all.''

In this connection attention is called by the attorney-general to the fact that there was no claim of accident, nor was it contended by appellants that they believed they were taking their brother's machine, but their whole defense was that they had the right to ride in this particular machine and, hence, it is asserted, that the proposed evidence was immaterial. Manifestly, it would have no tendency to excuse or justify their conduct in riding with Ryan. In fact, they needed no justification further than their own explanation, but, unfortunately for them, the jury rejected it. But the real purpose of the evidence was to support the probability of their story and to weaken the contention of the people that they had willfully taken Mr. Sherfey's machine. [1] It is a familiar rule that a motive for the commission of a crime may be shown as a circumstance tending to show guilt and the absence of motive or reason for the commission of the alleged offense may be considered as a circumstance favorable to the accused. (*People* v. *Brown*, 130 Cal. 591, [62 Pac. 1072]; *People* v. *Bauweraerts*, 164 Cal. 696, [130 Pac. 717].) Having, therefore, the permission of their brother to use his machine, they claim it would be less probable that they would willfully take some other machine without permission. Being able, in other words, to accomplish their purpose lawfully, it is argued that they would be less likely to resort to unlawful means. If they had contended that they did not use Sherfey's machine at all or that they supposed they were taking their brother's machine, the materiality of the proposed evidence would be quite apparent. However, in aid of their plea of not guilty and

to rebut the theory of the prosecution, they had the right to introduce any evidence that might logically relate to the question of guilty knowledge. The force of the claim as to the willfulness of the use of Sherfey's machine might be impaired if the jury believed that appellants had permission to use their brother's machine. This upon the theory, of course, that men do not ordinarily commit crime when they can just as easily accomplish their purpose in a lawful manner. **[2]** We think, therefore, the evidence was admissible for what it was worth.

**[3]** However, the evidence would have been cumulative, merely, as the other two brothers testified, without objection, that defendants had permission to use said machine—presumably for a proper purpose. There was no dispute as to that and the refusal to allow additional evidence of the same kind, if erroneous, was without prejudice.

**[4]** If it may be said that the court's said remark might be considered as implying that the taking of Sherfey's machine by defendants without consent was sufficient to justify conviction in the absence of *willfulness* it is sufficient to answer that the effect of such implication was entirely removed by the subsequent instructions of the court. For instance, the jury was directed substantially that the taking must have been *willful* and *felonious* to warrant a conviction. The theory of appellants was specifically covered by this instruction: ''If you have a reasonable doubt from the evidence whether the defendants operated the machine as charged or rode with one Ryan, believing Ryan had a right to use the machine, you must find the defendants not guilty.'' The jury was also fully instructed as to the burden of proof, the doctrine of reasonable doubt and the presumption of innocence. In fact, every principle of law germane to the situation was properly presented and the jury must have had a comprehension of the legal aspect of the case.

As far as the facts are concerned, it may be added that the jurors were entirely justified in believing that Ryan was a mythical person originating in the exigent need of appellants to fabricate a defense.

The second and third objections of appellants are based upon the following showing: Defendant Ed Kepford was cross-examined by the district attorney as follows: ''Q.

You were previously convicted in this county of a felony on August 2, 1915? A. Yes, sir—not that I know of, a felony, no, sir. Q. You plead guilty to a charge of burglary which was for the taking of an automobile? A. I plead guilty; yes. They told me I could get out of it, that is the way, only way, I could get out of it. Q. For the taking of a Japanese automobile? A. Yes, sir, from about thirty feet from my place, standing up against a locust tree." Then in the argument to the jury by the district attorney this appears: "We might consider the tendency of Ed Kepford from his past history. Mr. Foltz: We assign that as error, 'the tendency of Mr. Kepford.' The Court: I think, Mr. Van Vranken, you can only consider that for the purpose of weighing testimony. Mr. Van Vranken: That is the purpose. I was in error, your Honor. The Court: Only for that purpose. I will have to instruct to that effect."

[5] It is claimed that it was incumbent upon the people to show a *judgment* of conviction either by a production of the record or by an interrogation of the witness to that effect. In some instances the term "conviction" is used as including not only a *verdict* but also the *judgment* which follows. But that a verdict of guilty constitutes a conviction within the contemplation of section 2051 of the Code of Civil Procedure, providing that "a witness may be impeached by the party against whom he was called by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony," is positively determined by the supreme court of this state in *People* v. *Ward*, 134 Cal. 301, [66 Pac. 372]. Therein it is said: "It is contended that at the time the witness testified he had not been 'convicted of a felony'; that to sustain the ruling of the court, it must be assumed, as a matter of law, that the verdict of guilty constituted a 'conviction.' That such verdict does constitute a conviction, within the ordinary as well as the technical meaning of the word, seems to be well settled." (See, also, section 1151 of the Penal Code.)

The district attorney elected to take the usual course and ask the witness, first, if he had been convicted of a

felony, adopting the language of the statute. This was an entirely proper question. The answer was somewhat equivocal, and it was followed by the question as to his pleading guilty to a charge of felony. The answer of the witness to the question showed that he had been convicted of a felony—his plea of guilty being equivalent to the verdict of a jury. In view of his answer, it was, of course, unnecessary to produce the record of conviction.

As to the objectionable remark of the district attorney it is to be observed that when his attention was called to it he immediately corrected it and the court properly instructed the jury as to the purpose for which said conviction might be considered. There is no claim that the district attorney acted in bad faith or that he sought to take an unfair advantage of the defendants. Under such circumstances the inadvertent statement must be regarded as harmless.

Appellants seem to have been fairly tried and justly convicted and the judgment and order are, therefore, affirmed.

Finch, P. J., and Hart, J., concurred.